GARY M. RESTAINO
United States Attorney
District of Arizona
Matthew Williams
Assistant U.S. Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: matthew.williams3@usdoj.gov

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice
Shane Butland
Trial Attorney
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-286-1177
Email: shane.butland2@usdoj.gov

Attorneys for Plaintiff

☒ FILED ☐ LODGED

Jun 21 2024

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Bethany Jameson,<br>Defendant. | No. CR-24-01068-01-PHX-DWL<br>**I N F O R M A T I O N**<br>**VIO:** 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)<br>18 U.S.C. § 981(a)(1)(C);<br>28 U.S.C. § 2461;<br>18 U.S.C. § 982(a)(7)<br>(Forfeiture Allegations) |

THE UNITED STATES ATTORNEY'S OFFICE CHARGES:

**BACKGROUND**

At all times relevant to this Information:

**The Medicare Program**

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered, among others, health services provided by skilled nursing facilities, hospices, and home health agencies. Medicare "Part B" covered, among other things, medical items and services provided by physicians, nurse practitioners, group practices, and other qualified health care providers, that were medically necessary and ordered by licensed medical doctors or qualified health care providers.

4. Physicians, nurse practitioners, group practices, and other health care providers (collectively, "providers") that provided services to beneficiaries were able to apply for and obtain a "provider number." A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for items and services provided to beneficiaries.

5. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name; (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring or rendering physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically via interstate wire.

6. When submitting claims to Medicare for reimbursement, providers were required to certify that: (1) the contents of the forms were true, correct, and complete; (2) the forms were prepared in compliance with the laws and regulations governing Medicare; and (3) the items and services were reasonable and medically necessary.

7. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations.

8. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

**The Defendant and Related Entities**

9. Defendant BETHANY JAMESON was a resident of Gilbert, Arizona, in the District of Arizona. BETHANY JAMESON was a nurse practitioner licensed by the State of Arizona and an enrolled Medicare provider. From in or around November 2022, through in or around August 2023, BETHANY JAMESON applied amniotic allografts distributed by Company 3 to Medicare beneficiaries as an independent contractor with Company 1 and Company 2.

10. Company 1 and Company 2 were limited liability companies formed under the laws of Arizona, with their principal place of business in Phoenix, Arizona. Company 1 and Company 2 were providers of products distributed by Company 3. Company 1 and Company 2 were also enrolled Medicare providers and submitted claims to Medicare for payment.

11. Company 3 was a limited liability company formed under the laws of Texas, with its principal place of business in Fort Worth, Texas. Company 3 was a wholesale distributor of various amniotic allografts.

**COUNT 1**
**18 U.S.C. § 1349**
**(Wire Fraud Conspiracy)**

12. Paragraphs 1 through 11 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

13. Beginning in or around November 2022, and continuing through in or around August 2023, in the District of Arizona and elsewhere, BETHANY JAMESON did knowingly and willfully combine, conspire, confederate, and agree with individuals and associates with Company 1, Company 2, and Company 3, and others known and unknown to the United States, to knowingly participate in a scheme or plan to defraud Medicare, a health benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), for the purpose of obtaining money and property, by means of false and fraudulent pretenses, representations, promises, and omitted facts, and used or caused to be used interstate wire communications to carry out the scheme, in violation of Title 18, United States Code, Section 1343.

**Purpose of the Conspiracy**

14. It was the purpose of the conspiracy for BETHANY JAMESON and others, known and unknown to the United States, to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for items and services that were (i) medically unnecessary, (ii) ineligible for Medicare reimbursement, (iii) not provided as represented, and/or (iv) procured through kickbacks and bribes; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of BETHANY JAMESON and her co-conspirators, and to further the fraud.

**Manner and Means**

The manner and means by which BETHANY JAMESON and her co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

15. From approximately November 2022 through approximately August 2023, BETHANY JAMESON, as an independent contractor with Company 1 and Company 2, agreed with others to order and apply amniotic allografts that were procured through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented.

16. From approximately November 2022 through approximately August 2023, Company 1 and Company 2 fraudulently billed Medicare approximately $71,145,561 for amniotic allografts purchased from Company 3 and applied by BETHANY JAMESON that were procured through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented. Company 1 and Company 2 used interstate wire communications to submit these claims to Medicare. Medicare paid Company 1 and Company 2 approximately $49,934,808 based on those false and fraudulent claims. Company 1 and Company 2 paid BETHANY JAMESON approximately $230,512 in exchange for ordering and applying the amniotic allografts billed to Medicare.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;**
**18 U.S.C. § 982(a)(7))**

17. The above allegations contained in this Information are hereby incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture against the defendant, BETHANY JAMESON, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7); and Title 28, United States Code, Section 2461.

18. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), together with Title 28, United States Code, Section 2461, as a result of the foregoing violation as charged in Count 1 of this Information, the defendant, BETHANY JAMESON, shall forfeit to the United States: any property, real or personal (a) which constitutes or is derived from proceeds traceable to the commission of the offense, and (b) that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

19. Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of the defendant's violation as charged in Count 1 of this Information.

20. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, BETHANY JAMESON, shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

Dated this 21st day of June, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

Digitally signed by MATTHEW WILLIAMS
Date: 2024.06.21 13:15:25 -07'00'

Matthew Williams
Assistant U.S. Attorney

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

SHANE BUTLAND Digitally signed by SHANE BUTLAND
Date: 2024.06.21 16:24:06 -04'00'

Shane Butland
Trial Attorney